Aarin Nygaard v. Tricia Taylor All right, we're ready to hear argument. Ms. Hage, are you first up? Yes, Your Honor. All right, you may proceed. May it please the Court, Counsel? In a North Dakota state court custody proceeding between a mother and a father, the court awarded custody of their child to the father. The Federal Parental Kidnapping Prevention Act requires other jurisdictions, including the Cheyenne River Tribal Courts, to recognize and respect those ongoing custody proceedings and the orders issued within. To conclude otherwise would directly conflict with the Act's specific purpose of deterring parental kidnapping and form shopping in custody matters. You may be right on the policy, but, Counsel, what do you do about the fact that states defined by that Act, and State doesn't have tribes or anything like tribes in it, unlike seven other full faith and credit statutes? Your Honor, I would offer that the territories or possessions within that definition of states encompasses tribes. At that point in time, when you look at the historical backdrop of the passing of that statute, as well as other statutes of legislative history that correspond and relate to the Parental Kidnapping Prevention Act. But territories are fundamentally different, are they not? The sovereignty, the authority of a territory is granted by the Federal Government, right? And the Indian tribe has its own pre-existing sovereignty. So how are you putting it in? Are you putting the Indian tribes into the definition of territory? Yes, Your Honor. And we look at it from a geographical context instead of a political context. And that's what the Eberhard decision by the Tribal Court of Appeals itself had concluded. So the territory of the United States instead of a territory? So when you look at the United States as a whole, what is considered within the United States? But wouldn't that be a difference between, I don't mean to be dancing on the head of a pin here, but the difference between a or the, a territory with its own government and the territory of the United States, which would be the geographical territory which we call the United States. Is that not a difference that has meaning? I don't believe that's a difference, or I don't believe that's a distinction with a difference. I think that's probably a distinction without a difference. In this case, when you're looking at other things such as the purpose of the PK, the Parental Kidnapping Prevention Act itself, as well as how courts have viewed reservations as a part of the United States and a part of the state. What about the Supreme Court cases? I've got two or three like Wheeler and Puerto Rico case and D-E-N-E-C-P-I case. Does that mean? I don't know. But those cases that clearly say in plain English that tribes are not territories. They're distinguished from territories, et cetera. And that's the whole basis of the decision in those cases. What can you do with those cases? I would point you to the Rules of Standard Statutory Construction that require us to look at the intent of the statute at issue here, the purpose of the statute at issue here, and also look at other cases outside of those that refer and discuss tribes and their reservations, such as Nevada v. Hicks is a Supreme Court decision. And in that case, and I'll pull up the language here, it talks about the reservation is considered part of the territory of the state, as well as others that are quoted in my brief where they're talking about being within the boundaries of the United States as a whole and within the states as well. And that citation for Nevada v. Hicks is 533 U.S. 353. Is it in your brief? I don't believe that one may be. Yeah, I don't think it is either. But other ones that are in there stand for that same premise of being encompassed. What's your best Supreme Court case? That would be the better way to ask my question. For that principle, I would say Nevada v. Hicks. I think the brief cites the Oklahoma Supreme Court case where they're talking about the reservations being encompassed by the United States as a whole. I can't recall if it's the McGirt v. Oklahoma or there's an Oklahoma. Castro. Yeah, Castro. It is a Supreme Court case. Proceed. Yes. So taking a step back here and looking at the facts of what we're dealing with, it's precisely what the Parental Kidnapping Prevention Act sought to address and eliminate. Here are the facts. What if the parents of the kidnapped child, What if we were to disagree with your interpretation of the definition of state and said that, well, at least on the face of this, at least it's not clear that it is included in territory. How far does intent, where are you going for the intent? In other words, not just the sort of basic idea that Congress wanted to prevent this kidnapping situation from causing strife among the families. Where are you going particularly to legislative history? What can you point to to tell me why the tribes are included? I would say it's that overall purpose of intending to stop conflicting court orders, violations of due process, other things that they pointed out, excessive relitigation of cases that's going on. There's no particular, you can't point to any particular language within legislative history besides, excuse me, just the general purpose behind the act? Not specifically, Your Honor. And for that principle, I would point you to the general applicability statutes that say it kind of flips it that you don't need something specific saying this applies to tribes. This applies to everyone and tribes. This general applicability statute applies to everyone unless you say it doesn't apply to tribes. I would also add on to that that if you look at the legislative history for the corresponding, the Child Support Orders Act, which is followed, follows the Parental Kidnapping Prevention Act in statute. It is Section 1738B. That legislative history says, well, the Child Support Orders Act says it applies to states. Just like the Parental Kidnapping Act, it applies to District of Columbia, Commonwealth of Puerto Rico, and Indian Country. In that statute it specifically names it. Yet if you look in the legislative history of the Child Support Orders Act, it was intended to extend that exact same full faith and credit recognition as the Parental Kidnapping Prevention Act. Is that a House committee report? I believe that was a Senate report. A Senate report. Do you know what the language was at the time that committee report was written? Words change as Congress goes through. Do you know what the bill the Senate was looking at said at the time of that report? I do not, Your Honor. Okay, thank you. I apologize. But there that highlights that if that was the purpose and intent of the Child Support Orders Act for that language to mirror the application of the Parental Kidnapping Prevention Act, and it included that additional Indian Country reference on top of the territories and possessions language that shows you that the addition of that term is a distinction without a difference. It's meant to be all-encompassing is the general purpose of these acts. The rules of statutory construction require us to look beyond the – they require us to look at the broader context of the statute and its history and purpose. As described by this Court in your next – Counsel, don't you usually do that when a statute is ambiguous? Shouldn't you really only go with the purpose if the statute is unclear? Because Congress adopted it and the President said it, signed it. And, Your Honor, I would point you to the fact that in this case, the District Court found that the statute and the word territories was ambiguous. And so that next step, that further analysis should have been done, but it was not in this case. The United States v. Ashcroft case of this Court, 732 F. 3D. 860, tells us we have to look at the provision, the statute as a whole, the objects and policy of the law, and then interpret it in a manner that executes the will of Congress. Here, the will of Congress is to stop parental kidnappings, the precise crime that Ms. Taylor was charged with when she absconded to the reservation with a one-year-old child who is now 10 years old, but the dad hasn't seen that child since. This is the precise issue that Congress sought to address in the Parental Kidnapping Prevention Act. Now, if you look at the Dement v. Oglala Sioux Tribal Court and the Eberhard v. Eberhard, it is the same fact pattern where we're singling out tribal reservations, we're letting this happen even though Congress sought to prevent it. And that's why we need to take a closer look at that, the purpose of it, and interpret the PKPA with that purpose in mind. Reservations are not to be an asylum for criminals, and that is precisely what this interpretation of the Parental Kidnapping Prevention Act has created. Do you know of any efforts to take this issue to the Congress, bring it to their attention? I do not, Your Honor. I do not. If we look at the canons of construction as well, if under the Court's position that it was ambiguous, we must construe ambiguities in favor of tribal sovereignty, and a construction of including tribes within the PKPA does precisely that. This would put the tribes on the same playing field as other jurisdictions. You mean take them down? I'm sorry. I think your argument bends both ways. Tell me how I'm wrong. So under that canon of construction, if we're favoring tribal sovereignty, an interpretation where tribes are included in the full faith and credit of the Parental Kidnapping Prevention Act, it would put their courts on the same line as state courts, as other jurisdiction courts, where they have to recognize each other. Instead of them being more important than other courts, right? Their decrees being more important than other courts, their sovereignty being more full-blown. That's the reason I say I think the argument goes both ways, but tell me how I don't understand. I would say yes, Your Honor, in this situation. But if it's the flip side and you have a state court not enforcing an earlier-in-time tribal court, that's where they're ignoring it. They're not up on that same level. They're not getting that recognition. So interpreting it to include tribes would allow for that to happen, that tribal sovereignty. They're respected. They're treated the same as other courts. In addition to asking that this court reverse the tribal courts or the grant of summary judgment in favor of the tribal courts, we're also asking this court to reverse the denial of Mr. Nygaard's motion for summary judgment. We believe that's appropriate at this time, given the facts on the record. The tribal court has alleged possible abandonment under the Parental Kidnapping Prevention Act, as well as an emergency. But here there's been no abandonment. This has been in litigation since the very start. As to an emergency, we're faced with a situation years and years down the road. That emergency provision is supposed to be temporary. Here, if there are any allegations of abuse, there have been subsequent North Dakota state court proceedings where Ms. Taylor had notice and opportunity to present those allegations in the North Dakota state court proceeding, and did not do so to allow her to come in or to allow anyone to come in and present allegations for something like that. Tribal court would essentially, again, undercut the purpose of the Parental Kidnapping Prevention Act. At this time, I'll reserve my remaining time for rebuttal. Very well. Thank you for your argument. Thank you. Mr. Gunn, we'll hear from you. Good morning, and may it please the Court. Thank you, Counsel. The Cheyenne River Sioux Tribe is a federally recognized Indian nation whose right to self-government was affirmed in the 1851 and 1868 Fort Laramie Treaties with the United States. The Supreme Court made clear in Ex Parte Cro-Dog that tribal self-government includes, quote, the regulation by tribes of their own domestic affairs by the administration of their own laws and custom. That includes, among other things, the regulation of domestic relations, including custody of tribal member children on the reservation. The tribe has the inherent authority to enter temporary custody orders concerning tribal member children, like the children here, who are found in need of care and custody on the reservation. This case does involve allegations of abuse and neglect, including allegations of domestic violence, child sexual abuse, and drug and alcohol abuse. The tribe's authority has been recognized and affirmed in the treaties and in the Indian Child Welfare Act, which affirms the inherent and exclusive jurisdiction of tribal courts over certain child custody placements arising in Indian country. The PKPA does not apply to the Cheyenne River Sioux tribe or limit its powers of self-government. By its express terms, the PKPA applies only to states and territories of the United States. And possessions. Go ahead. That's right. And, Your Honor, I think the Torres case, which we cite in a footnote, footnote six, and the district court also cites the footnotes, they really, the courts have really used the term territories and possessions interchangeably. And if you look at the statutes dealing with territories and even the maritime regulations, they use that term. So it's sort of redundant, but just sort of a term of art. I think it's, I think the territories and possessions is a term of art, and although possessions doesn't add anything, it hasn't been, I guess they haven't performed that. And you mean, counsel, in this context? Because they have different forms of government and different powers and different appointments and different, some other things are different. That is correct. Although I think in our brief we do outline, I think we have one incorporated territory, which is Palmyra, and we have, I think, 13 unincorporated territories, including Puerto Rico, Guam, the Mariana Islands, et cetera. The Supreme Court has repeatedly held that tribes and Indian reservations are not states, and we needn't delay too much on that point. And in a series of cases, beginning with Wheeler, which I'll note was decided in 1978, two years before the PKPA was decided, and then continuing with Puerto Rico versus Sanchez Valle, which is 2016, and, Your Honor, I think it's D'Nespy versus, I think it's a hard one, but it's D'Nespy versus the United States. That's a case that was decided after the district court issued its ruling in this case, and so that's one of the reasons it's probably not cited by the district court. All of those cases found that Indian tribes are not territories. As one or more of you have already recognized, territories are federal instrumentalities whose powers derive from the federal government, whereas Indian tribes are prior separate sovereigns whose powers of self-government are inherent and predate that of the United States. Tribes have a treaty-based government-to-government relationship with the United States, and against this, I'll say, the case that we cite, no attack, really illustrates the idea that tribes were not a part of the constitutional convention, and one of the purposes of the full faith and credit clause is to reduce, to some extent, the sovereignty of each state to form a single nation, to require each state to recognize and honor the judgments and laws of every other state, and that's a part of the compact. The tribes were not a part of the constitutional convention. But Congress could change that, right, like they have in the other 7-8 acts? Under existing federal law, and Congress has in seven statutes granted full faith and credit. As I hear the plaintiff's argument, it's not necessarily that the tribes are states or that they are really a territory, but that somehow it's ambiguous here and that we need to look at the purpose behind this particular statute. So I'd be interested to hear if you have any thoughts on why Congress might have, if you are right that the tribes are not included in this statute, why do you think Congress, if you have any theories, would have excluded the tribes from a statute like this, kidnapping, but included the tribes for the child support, for the violence against women, other things that, you know, that none are exactly like the other, but they sort of have a similar theme running through. Can you speak to that if you have some thoughts on it? Well, you're asking for us to opine and to surmise what we think Congress might have intended because the legislative history contains no express statement or indication. Do any of the, have you looked in the legislative history of any of these statutes, sort of passed around similar time periods, as to a discussion of including the tribes or not including, not just the statute, but the other statutes? Well, Your Honor, let me say this about legislative history. There was some discussion of the 1994 Senate report on the child support order statute, which does include the term Indian country. And which suggests, by the way, even if the court were to construe the word state territory possession as a geographic notion, the inclusion of the geographic location Indian country in the 94 statute shows, even there Congress knows it has to be expressed. But in that Senate report, all it says is, and I made some notes having looked at it again, that the intent of the child support statute was to require states to give full faith and credit to the support orders of other states. There's no deep dive on the difference in the definition of state between one statute and the other. The Indian Child Welfare Act, excuse me, bless you, does require states to give full faith and credit to tribal court orders. And the Indian Child Welfare Act is passed in 1978. It's arguably the most comprehensive federal statute dealing with Indian child custody orders. And it limits that definition. It's not all custody orders, as the court is well aware, but those that are defined in the statute. It is quite possible that when Congress passed the PKPA in 1980, it knew it had just enacted comprehensive legislation in 78 and understood that the Indian Child Welfare Act is the full faith and credit regime for certain tribal custody orders and state custody orders, but it declined to extend it wholesale. One can imagine scenarios where if Congress did intend the PKPA to apply, but didn't specify how it related with ICWA, that there would be unintended irreconcilable conflicts between those two statutes passed close in time. I do have a law professor question for you. The Mackey v. Cox case, which is 1856, pre-Dred Scott, says that a tribe is a territory. It does say that. Okay. Has the Supreme Court ever expressly overruled Mackey v. Cox? I don't know if the Court has ever said we're overruling Mackey. Or it's abrogated or some similar words. What we have said, Your Honor, is, and I'm going to pull my notes, that, of course, I can't find those notes when I need them. But you know what's, go ahead. In a later case, the Court cites, and I think it's Ex parte Morgan from the Western District of Arkansas, with approval for the proposition that a tribe is not a territory. And then, of course, you have Wheeler, Sanchez, Valle, and Dinespy, all of which squarely hold that tribes are not. But they don't mention Mackey. They don't. Has the Supreme Court cited Mackey in modern times? You know, I don't believe so, Your Honor. And I was going to ask you when the last time they cited it was, but that's kind of unfair. Go ahead. And I'd be happy to, you know, submit a letter, a supplemental letter. I'd be interested in the status of Mackey v. Cox. What I can say is that Mackey doesn't construe, construes a much narrower statute, even than the Full Faith and Credit Act. And so its application beyond its particular context is somewhat limited. The Court in Mackey talks about tribal powers of self-government. They don't even use self-government. They say the powers originate in our constitutional laws. And, of course, in Talton v. Mays, the Supreme Court rejects that, and that's carried forward in Wheeler, Santa Clara, Pueblo, and other cases where the Court very squarely says tribal self-government is inherent. It doesn't derive from federal constitution and laws. So one can see if Mackey had that erroneous premise that it may have made the quick, albeit I would say erroneous, jump to say that tribes are territories. That's not a modern view. That hasn't carried forward. There's been some suggestion in the briefing and then today that the Court should take a geographic approach and look at these terms in the statute as referring to geographic areas, and because tribes are geographically incorporated within states, maybe one can say that a tribal court is a court of a state. If the Court were to take that approach, that's a very slippery slope. I'll remind the Court that even the full faith and credit clause in the Constitution says, and I quote, full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. If we start looking at these, the clause and then the full faith and credit act and the PKPA as referring to geographic areas as opposed to political sovereigns, it's quite possible that some would say, well, why wouldn't the full faith and credit clause apply? And, of course, we know that it doesn't. The better way for me to say it is that we're not talking about geographic areas. We're talking about political entities, and tribes are not mentioned. When Congress intends to include tribes, it does so expressly, and that comports with the notion that tribes have inherent sovereignty and that it remains unless expressly divested by the federal government. That's Hickory, Apache, and Bay Mills. And we don't read silence, and here we have just complete silence in the text of the statute and in the legislative history, not one mention of tribes, Indians, or Indian country. We don't read that silence to work a divestiture or a forfeiture of an aspect of inherent tribal sovereignty. The proper approach here is to respect the sovereignty of the tribe, allow the tribe to enforce foreign orders based on principles of comity, which is the rule that South Dakota applies and North Dakota, Minnesota, and many other jurisdictions. There have been cases like Mackey and some old state court cases that have said tribes are territories, but what you see, and we cite the kind of trajectory of cases, is that the modern approach is away from that, away from an approach that tribes are territories, really a rejection of that approach and an acceptance of the idea that tribes are their own unique separate sovereigns, and if Congress wants to apply a full faith and credit mandate, it does so expressly. There was some discussion of laws of general applicability and the fact that they ought to apply in Indian country unless Congress expressly states that they don't, and I would just note that that is not a rule of statutory construction that has favor in the Supreme Court. When you look at modern cases like Bay Mills, which cites and collects a number of cases, the principle is that tribes retain those aspects of inherent sovereignty that have not been divested, and Congress must make its intent unequivocal or clear. Here the silence is not clear. In a case cited in Bay Mills, Dion, that deals with when does Congress abrogate a treaty, and in Dion the court said before we'll find that Congress has abrogated a treaty, we must find that Congress considered the conflict between the statute and the treaty right and resolved the conflict against the treaty right and in favor of the statute. It's impossible to do that here, Your Honors, because the statute and its legislative history are silent. There was some note, some discussion about, and I see my time is drawing to a close, about the facts of the case, and you're right, your time is drawing to a close. So we thank you for your argument. Thank you very much, Your Honor. We'll hear rebuttal. Thank you. Thank you. In United States v. White, I believe territories included reservations and included tribes. It is not universal across the board that territories is to be interpreted as not including reservations or tribes. That is why the next step must be taken to look at the act's specific purpose. White's a tax case that has many other statutes involved, right? What was that, Your Honor? I'm sorry. I was trying to help you on time. White is a tax case that has many other statutes playing in that case, correct? I believe so, Your Honor. Yes. Proceed with your argument. Sorry. So the tribal courts make no attempt to convince this Court that their proposed interpretation of the PKPA satisfies the congressional intent. As to the generally applicable law, counsel has indicated that that's more of not a modern thing. I'll point you to the National Labor Relations Board case of the Sixth Circuit, which was decided in 2015, and that citation is 788F3D537 that says silence can mean tribes are included unless the certain exceptions are met. With that, if there's no other questions, I will end. Very well. Thank you for your argument. Thank you. The case is submitted. The Court will file a decision in due course.